## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Richard F. Atwood, being duly sworn, declare and state as follows:

1. I am a United States Postal Inspector employed by the United States Postal Inspection Service (USPIS), Boston Division, Rhode Island Domicile and have been so employed since June 2016. I have authority to enforce the criminal laws of the United States and to make arrests. I have been a law enforcement officer for over twenty-two (22) years. I was also previously a U.S. Postal Inspector from June 2003 to August 2009. In my capacity as a U.S. Postal Inspector, I investigate a wide variety of offenses and violations of federal criminal law, including offenses involving the transportation of controlled substances and other contraband through the United States Postal Service. From August 2009 to June 2016, I was a Special Agent with the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Office of the Special Agent-in-Charge, Boston (SAC/BOS), Airport/Seaport Group.

2. I submit this affidavit in support of a Criminal Complaint charging EDGAR ANTONIO MEDINA ("MEDINA"), ANDRES GARAY ("GARAY"), and RONALD HALL ("HALL") with conspiracy to possess with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 21 U.S.C. § 846.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient

probable cause for the requested Complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## Abduction of U.S. Postal Carrier

4.   On June 1, 2021, a United States Postal Service (herein USPS) letter carrier (herein referred to as VICTIM 1) was delivering mail on a postal route, when he was abducted at gunpoint by two unidentified individuals and forced to get into a vehicle. The location of the site where the letter carrier was ordered into the waiting vehicle was in the access driveway splitting the two apartment complexes located at 210-220 Division Street, Pawtucket, RI 02860. According to VICTIM 1, the incident occurred less than a minute after a USPS parcel was scanned as delivered, destined for an addressee at the above captioned address. Postal databases show the above referenced parcel was scanned at 12:54PM EST.

5.   According to VICTIM 1, after being ordered into the vehicle, he was driven to his residential address located in Pawtucket, RI, in order for the individuals to search the home. Once the two individuals realized VICTIM 1 did not have his house keys on him and they could not enter the employee's residence, they decided to return the employee back to an area near the original abduction point.

6.   During the duration of the abduction, the two individuals asked the employee about a USPS parcel delivered, they claimed, without any contents inside of it. The individuals indicated the parcel had been delivered on May 24, 2021 to 34 Melrose Avenue, Pawtucket, RI, 02860 (herein referred to as the MELROSE AVE PARCEL). USPS

databases revealed the MELROSE AVE PARCEL was scanned "delivered" at 3:04 pm. Additional USPS databases revealed the MELROSE AVE PARCEL was wrapped in what appeared to be saran wrap, which indicates there was possible damage to the parcel.

7.      The individuals indicated to VICTIM 1 that they had been conducting surveillance of the employee since the MELROSE AVE PARCEL was delivered, which is how they knew his residential address. VICTIM 1 described the vehicle of the abductors as a gray/silver 4 door sedan, possibly an older model Audi A4, with cracked leather seats. Inspectors were able to obtain various surveillance videos from neighbors and local businesses in the area and were able to identify the vehicle as an older model silver Chrysler 300, with rear driver side quarter panel damage. Upon further review of the video surveillance, Inspectors observed an individual seated in the rear passenger seat wearing a baseball hat. It should be noted that VICTIM 1 was wearing a baseball hat that day. Upon showing VICTIM 1 the surveillance photos, he was able to positively identify the vehicle as the one he was forced into.

<u>MEDINA's Link to Prior Suspected Drug Parcels from Puerto Rico</u>

8.      Utilizing proprietary USPS databases, I learned that either the same individual or device that was querying the status of the MELROSE AVE PARCEL was also querying the status of a parcel shipped from Puerto Rico addressed to M.V. of 28 Harris Avenue, Apt. L17 Cranston, RI (herein referred to as the HARRIS AVE PARCEL), which was also delivered on May 24, 2021. M.V. is the mother of MEDINA. This leads me to conclude the parcels are related. I have found in my training and experience that even when packages containing narcotics are shipped to different addresses to avoid law

enforcement detection, one individual will monitor the packages to ensure that they arrive on a timely basis and are not interdicted by law enforcement. It should be noted that an image of the HARRIS AVE PARCEL was obtained, and it did not appear the parcel was wrapped in saran wrap. Additionally, the handwriting on the label for both parcels, based on my training and experience, appeared to be the same[1].

9.  Utilizing CP Clear, Inspectors conducted a query of possible residents at 34 Melrose Avenue, Pawtucket. Among the names associated with the address was defendant MEDINA. The CP Clear data also revealed MEDINA possibly owned a Chrysler 300, Vehicle Identification Number (VIN): 2C3CCARG1FH842283.

---

[1] In this Affidavit, in describing Priority Mail parcels sent from Puerto Rico to various addresses, I have stated that the parcels were suspected to contain controlled substances. In general, the belief that the parcels described in this Affidavit were "suspected to contain controlled substances," is based on some of the following reasons:
  a) Two parcels were often sent on the same date. Despite being sent on the same date, the parcels listed different senders, were sent from different post offices in Puerto Rico, and/or were sent to different recipients and/or addresses in Rhode Island. However, the parcels were tracked by the same IP address, causing officials to believe that the parcels were related, notwithstanding efforts of the sender(s) to conceal the connection between the parcels. In my training and experience, and having spoken with other USPIS Inspectors, I know that when a parcel contains illicit substances, a sender often takes efforts to conceal the identity of the sender listed on the parcel.
  b) Many of the return addresses on these parcels are legitimate addresses, but the listed sender is not associated with that address. Based on my conversations with USPIS Inspectors and my own experience, I know that narcotics traffickers often use fictitious sender names, along with existing return addresses, on parcels containing controlled substances or proceeds from the sale of controlled substances. The existing address lends a legitimate appearance to the parcel. In the event the parcel is intercepted by law enforcement, the false sender name protects the identity of the mailer.
  c) The parcels were sent from Puerto Rico, which, in my training and experience, is a known source location for cocaine.
  d) The parcels were paid for in cash, which, in my training and experience, is a known method of purchase by narcotics traffickers in order to conceal their identities.
  e) The parcels bore handwritten labels, which USPIS Inspectors know can be an indicator that the parcels contain contraband, when combined with other circumstances. Further, the investigation has also shown that the handwriting on some of the parcels, even if purportedly sent by different persons, is similar. In my training and experience, this effort to disguise the identity of the sender indicates an attempt of the sender to distance him/herself from the parcel due to the illicit nature of the contents.
  f) Most of the parcels were similar in weight, ranging between approximately 4 ½ and 10 lbs. In my training and experience, I believe that the parcels were sent with relatively consistent amounts of controlled substances, and the variances in weight were due to use of different packaging materials.

10.     Additional information revealed that MEDINA had a PO Box, located at Elmwood Post Office. Inspectors obtained a copy of the PO Box application for PO Box 73213, which detailed the applicant as "Northeast Window Cleaning" and the owner as MEDINA. The PO Box application was filed on October 1, 2019. The address listed for MEDINA on the box application was 34 Melrose Avenue, Pawtucket, RI, the address where the MELROSE AVE PARCEL was delivered.

11.     With the assistance of the Rhode Island State Police, a query was conducted through the Rhode Island Department of Motor Vehicles on all registered Chrysler 300's in the State of Rhode Island. Based on the records provided, Inspectors identified a silver 2015 Chrysler 300, Rhode Island registration 1CJ110 (herein referred to as the VEHICLE), registered to MEDINA of 20 Power Road, Apt. 6, Pawtucket, RI. The registration also lists a mailing address, which is PO Box 73213, Providence, RI 02907.

12.     A criminal history query of MEDINA revealed he was currently on federal supervised release after serving a sentence of 120 months for knowingly and intentionally possessing with intent to distribute in excess of 50 grams of cocaine, in violation of 21 USC 841(a)(1) and (b)(1)(A)(iii)(1); knowingly and intentionally possessing with intent to distribute heroin, in violation of 21 USC 841 (a)(1) and (b)(1)(C)(2); knowingly and intentionally possessing with intent to distribute marijuana, in violation of 21 USC 841(a)(1) and (b)(1)(D)(3) and in furtherance of a drug trafficking crime for which he may be

prosecuted in a court of the United States did knowingly and intentionally possess a firearm, in violation of 18 USC 924(c)(1)(A)(4)[2].

13. Inspectors then reviewed video surveillance from May 24, 2021 from the apartment complex at 28 Harris Avenue and observed M.V. retrieving the HARRIS AVE PARCEL from the apartment mailboxes. Shortly after, Inspectors observed what appeared to be a gray Toyota and an individual walking into the building, where the individual met M.V. Shortly later, the same individual was seen exiting the building carrying a bag with a large item inside and get back into the Toyota then leave the complex.

14. On June 4, 2021, members of the Inspection Service were checking all known addresses for MEDINA. Law enforcement databases were crosschecked, and it was discovered that MEDINA was pulled over by the Johnston Police Department, on Allendale Avenue in January 2021. Members drove through the area on Allendale Avenue and discovered the VEHICLE parked in an apartment complex, located at 262- 264 George Waterman Road, Johnston. The VEHICLE was parked next to a gray Toyota Camry, bearing Rhode Island registration IS-951 (herein referred to as the Toyota Camry RI/IS-951), registered to M.P. Upon further review of the VEHICLE, members observed the same rear driver side quarter panel damage as seen from the video surveillance during the abduction of the postal carrier.

15. A review of USPS databases and address history records at 262 George Waterman Road revealed a parcel addressed to "Edgar Medina 262 George Waterman

---

[2] Please refer to CRIMINAL DOCKET FOR CASE #: 1:04-cr-00043-JJM-LDA-1.

Road apt. 5 Johnston, RI 02919", bearing tracking number: 9505 5162 0941 1074 6986 86 (herein referred to as the GW ROAD PARCEL), which was shipped from San Juan, PR 00936 on March 15, 2021.  A review of the parcel image revealed the handwriting, based on my training and experience, resembled the handwriting on the MELROSE AVE PARCEL and the HARRIS AVE PARCEL.

16. The Rhode Island State Police contacted National Grid and requested information on all electrical service accounts for 262 George Waterman Road, Johnston. National Grid quickly provided the information and discovered among all the listed account was an account for M.V. for apartment B5. With the assistance of the Johnston Police Department, the property manager for 262-264 George Waterman Road, the Gia Villa Apartments was contacted and asked who the tenant was of Apartment 5 of 262-264 George Waterman Road. The property manager confirmed the tenant was MEDINA.

17. Inspectors continued to review USPS databases and address history records for the other known addresses for MEDINA, particularly 20 Power Road, Apt. 6, Pawtucket.  Inspectors discovered that a Priority Mail parcel was shipped on May 6, 2021 from San Juan, Puerto Rico to "Mr. Medina 20 Power RD apt. 6 Pawtucket, RI 02860" (herein referred to as the POWER RD PARCEL).  The POWER RD PARCEL weighed approximately 6 pounds 6 ounces and was delivered on May 10, 2021. A review of the parcel image revealed the handwriting, based on my training and experience, resembled the handwriting on the MELROSE AVE PARCEL, the HARRIS AVE PARCEL and the GW ROAD PARCEL.

18.     Utilizing proprietary USPS databases, I learned that either the same individual or device that was querying the status of the POWER RD PARCEL was also querying the status of a parcel shipped from Puerto Rico addressed to E.L. at 36 Blaisdell St Cranston, RI 02910 (herein referred to as the BLAISDELL ST PARCEL), which was also delivered on May 10, 2021.  This leads me to conclude the parcels are related.  I have found in my training and experience that even when packages containing narcotics are shipped to different areas to avoid law enforcement detection, one individual will monitor the packages to ensure that they arrive on a timely basis and are not interdicted by law enforcement.  Additionally, the handwriting on the label for both parcels, based on my training and experience, appeared to be the same.

<u>Packages Delivered on June 8, 2021</u>

19.     On June 5, 2021, Inspectors learned that a parcel was mailed on June 4, 2021 from Carolina, Puerto Rico, addressed to "Mr. Medina 262 George Waterman Rd Johnston, RI 02919[3]" (herein referred to as GW PARCEL 2). The return address on GW PARCEL 2 lists the sender as "A. Parsons 52 Parcelas Be Fajardo, PR 00740."  A review of USPS databases and CP Clear revealed the return address did not exist.  The sender name, "A. Parsons" was the same last name as an individual who received mail at 262 George Waterman Road, Apt. B5, Johnston, RI[4].

20.     Utilizing proprietary USPS databases, I learned that either the same individual or device that was querying the status of GW PARCEL 2 was also querying the

---

[3] The recipient "Mr. Medina" was also listed on the POWER RD PARCEL
[4] A query with USPS of all persons receiving mail at 262 George Waterman Road, Apt. B5, Johnston revealed a Talesha Parsons and Magdalia Valentin received mail in apartment B5.

status of a parcel shipped from Puerto Rico on June 4, 2021 addressed to "Jacqueline Mann 95 Atlantic Ave Providence, RI 02907" (herein referred to as the ATLANTIC AVE PARCEL). This leads me to conclude the parcels are related. An additional query of the same proprietary USPS databases revealed that either the same individual or device that was querying the status of the ATLANTIC AVE PARCEL was also querying the status of a parcel, also shipped on June 4, 2021 from Puerto Rico to "Robert Cruz 102 Congress Ave #1 providence, RI 02907" (herein referred to as the CONGRESS AVE PARCEL). Again, this leads me to believe these are related.

21.     A review of the return address listed on the ATLANTIC AVE PARCEL, listed the sender as "Sandy Parsons 22 San Damian #1 Carolina, PR 00982." A review of USPS databases and CP Clear revealed the return address did not exist. The sender name, "Sandy Parsons" was the same last name as an individual who received mail at 262 George Waterman Road, Apt. B5, Johnston, RI. The recipient "Jacqueline Mann" listed on the ATLANTIC AVE PARCEL was not associated with 95 Atlantic Avenue.

22.     The return address on the CONGRESS AVE PARCEL lists the sender as "Stephanie Parsons Calle 118 BN 12 Carolina, PR 00983." A review of USPS databases and CP Clear revealed the return address did exist. Based on the USPIS analysis described above and my own experience, I know that narcotics traffickers often use fictitious sender names, along with existing return addresses on parcels containing controlled substances or proceeds from the sale of controlled substances. The existing return address lends a legitimate appearance to the parcel. In the event the parcel is intercepted by law enforcement, the false sender name protects the true identity of the mailer. The sender

name, "Stephanie Parsons," was the same last name as an individual who received mail at 262 George Waterman Road, Apt. B5, Johnston, RI. The recipient "Robert Cruz" listed on the CONGRESS AVE PARCEL was not associated with 102 Congress Avenue #1.

### Search of Subject Parcels

23. On June 7, 2021, an anticipatory search warrant was authorized by the Honorable Magistrate Patricia A. Sullivan for GW PARCEL 2, ATLANTIC AVE PARCEL and the CONGRESS AVE PARCEL (collectively referred to as the SUBJECT PARCELs).

24. On the same date, Rhode Island State Police K-9 Trooper Neil Kelly, of the Rhode Island State Police K-9 Unit, agreed to assist me by conducting an examination of the SUBJECT PARCELs with his narcotic trained K-9 Aron. K-9 Aron is certified in the detection of heroin and cocaine by the New England State Police Administrators Conference (NESPAC). Trooper Kelly advised that K-9 Aron has been previously found to be reliable in the detection of narcotics.

25. The SUBJECT PARCELS were placed in three separate areas known to be free from contamination by narcotic odors. Other packages were also placed in each area as controls. Trooper Kelly had K-9 Aron search each of these areas. Upon arriving at the GW PARCEL 2, K-9 Aron reacted in a positive manner, indicating the presence of a narcotic odor. No further indications were observed in the search area. A positive alert by a certified narcotics canine is a strong indicator that the parcel contains narcotics or something, such as proceeds, that has been in close proximity to narcotics.

26. A few minutes later, K-9 Aron then searched the other area and upon arriving at the ATLANTIC AVE PARCEL, K-9 Aron reacted in a positive manner, indicating the

presence of a narcotic odor. Again, no further indications were observed in the search area. Finally, a few minutes after that, K-9 Aron search the last area and upon arriving at the CONGRESS AVE PARCEL, K-9 Aron reacted in a positive manner, indicating the presence of a narcotic odor. Again, no further indications were observed in the search area.

27. Postal Inspectors then executed the search warrant on the SUBJECT PARCELs and discovered in all three parcels, metal containers containing Dominoes, saran wrapped hard object bundles containing a white powdery substance, which field tested positive for cocaine. The collective weight from all three parcels was 3.25 kilograms (3250 grams).

### June 8, 2021 Surveillance

28. On June 8, 2021, surveillance was established by members of the Rhode Island State Police (RISP) Violent Fugitive Task Force (VFTF) at 262 George Waterman Road, Johnston, RI. The VEHICLE was still located in the front parking lot. At approximately 8:30 am, members of the surveillance observed the Toyota Camry RI/IS-951 arrive in the parking lot, driven by GARAY. GARAY was seen walking into 262 George Waterman Road.

29. A short time later, an individual operating a white 2007 Lincoln Navigator, later identified as A.R., arrived and met with MEDINA and GARAY outside. Eventually, GARAY was observed leaving in the Toyota Camry RI/IS-951. Members of the surveillance observed MEDINA and a young child leave in a gray Infiniti Q50, bearing Rhode Island registration, 1DA835 (herein after referred to as the Infiniti RI/1DA835) that was parked in the back of the apartment complex. A check of the gray Infiniti's registration revealed the owner to be Northeast Window Cleaning on 20 Power Road, Apt. 6, Pawtucket, RI.

30. At approximately 10:20 am, members of the RISP High Intensity Drug Trafficking Area (HIDTA) Task Force established surveillance in the area of 102/104 Congress Avenue in anticipation of the delivery of the CONGRESS AVE PARCEL. Upon arrival, members observed the Toyota Camry RI/IS-951 parked a couple of houses down from 102/104 Congress Avenue. The vehicle was occupied by a dark skin Hispanic male, who was positively identified as GARAY. Moments later, members observed GARAY exit the gray Toyota Camry and walk towards Hamilton Street wearing a green T-shirt and shorts. GARAY was observed walking down the street and later returning to the gray Toyota Camry RI/IS-951.

31. Members of the surveillance team then observed the Toyota Camry RI/IS-951 exit the parking spot, travel past 102 Congress Avenue at a slow rate of speed and later return to the same parking spot. Based on my training and experience is consistent with countersurveillance techniques used by suspects attempting to identify any law enforcement in the area.

32. Around the same time, MEDINA returned to 262 George Waterman Road in the Infiniti RI/1DA835 and was observed hanging outside between the apartment buildings (262 and 264 George Waterman) playing catch with the young child. At approximately 11 am, acting in an undercover capacity as a USPS Letter Carrier, operating a USPS vehicle, Postal Inspector Michael Maccarone delivered GW PARCEL 2 to the parcel locker mailbox outside of the apartment. Members of the surveillance team observed MEDINA talking on his cell phone while he was outside still playing catch with the young child.

33.     After Inspector Maccarone left the area, members of the surveillance team observed MEDINA and the young child go inside the building through the back door. A few minutes later, MEDINA exited the front door, talking on a cell phone and began to walk past the parcel locker. MEDINA continued to walk off the property onto Allendale Avenue while still talking on his cell phone. MEDINA walked right past members of the surveillance team, while they were hidden in their undercover vehicle, still talking on his cell phone approximately a mile down the road.

34.     Approximately 20 minutes later, MEDINA came back down Allendale Avenue towards the apartment complex still talking on his cell phone. MEDINA then walked back in the front door at 262 George Waterman Road. A few minutes, later, MEDINA hurriedly exited the building carrying a plastic bag and left in the Infiniti RI/1DA835.

35.     At approximately 12:43 PM, members of the surveillance team on Congress Avenue observed the Infiniti RI/1DA835 driven by MEDINA arrive in the area of Congress Avenue. Upon MEDINA arriving to Congress Avenue, members observed MEDINA travel past 102 Congress Avenue and travel onto side streets. Based on my training and experience, this behavior is consistent with countersurveillance techniques used by suspects attempting to identify any law enforcement in the area.

36.     At approximately 12:52 pm, members of the surveillance team in the area of 95 Atlantic Ave, Providence, observed an African American male wearing a pink polo style shirt look into one of the unmarked police vehicles while walking down Atlantic Ave. The African American male was later identified as Ronald HALL (herein referred to as HALL),

born in 1982. HALL was observed getting into the passenger side of MEDINA's vehicle, the Infiniti RI/1DA835, which was stopped at the intersection of Atlantic Ave and Hamilton Street. MEDINA then circled the area and drove towards Congress Avenue with HALL as the passenger.

37. At approximately 1:00 PM, Postal Inspector Michael Maccarone, still acting in an undercover capacity as a USPS Letter Carrier, operating a USPS vehicle, delivered the CONGRESS AVE PARCEL to the porch of 102/104 Congress Avenue. Moments after Postal Inspector Maccarone left the area, members of the surveillance team observed MEDINA return to Congress Avenue from the area of Hamilton Street, conduct a three point turn on Congress Avenue, and then turned into the driveway of 101/103 Congress Avenue. Upon entering the driveway, members of the surveillance team observed HALL exit the Infiniti RI/1DA835 and walk up to the front porch of 102/104 Congress Avenue. Prior to crossing the street, HALL was observed looking around, which based on my training and experience is consistent with countersurveillance techniques used by individuals attempting to identify any law enforcement in the area. As HALL was retrieving the CONGRESS AVE PARCEL, MEDINA was observed pulling out of the driveway and slowly traveling towards Melrose Street.

38. At this point, members of the surveillance team approached HALL and took him into custody. Additional members of the surveillance team then observed MEDINA attempt to flee the scene, while driving the Infiniti RI/IDA835; however, members stopped MEDINA's vehicle and took him into custody. Finally, the remaining members of the

surveillance team then responded to the Toyota Camry RI/IS-951 occupied by GARAY and took him into custody.

### Vehicle and Residence Searches

39. The Infiniti RI/1DA835 and the Toyota Camry RI/IS-951 were detained and transported to the RISP Barracks in North Scituate, Rhode Island. At approximately 3:07 pm, Inspector Brian Bukuras conducted a motor vehicle inventory of the Toyota Camry RI/IS-951 and discovered inside the vehicle the following items: one black expandable baton located in the driver's side door, one can of black saber defense spray located in the driver's door, one black Taser in a cloth case, located in the center console and two black surgical masks on the driver's seat and turn signal. The black surgical masks match the description provided by VICTIM-1 as being worn by the individuals who held him at gunpoint.

40. Inspector Bukuras conducted a motor vehicle inventory of the Infiniti RI/1DA8h35 and discovered the following: between the driver's seat and the center console was a black baton; located in the back seat was a black knit winter hat and on the driver's seat was one black surgical mask. VICTIM-1 informed law enforcement that both of the individuals who abducted him wore black surgical masks and that one of the individuals was wearing a winter-style hat.

41. Finally, a search warrant was executed on the VEHICLE after it was secured and transported to the USPIS Office, located at 24 Corliss Street, Providence. Discovered within the vehicle was a black surgical mask, matching the description provided by VICTIM-1 of the surgical masks worn by the abductors.

42.    After, MEDINA, GARAY and HALL were detained, members of the RISP VFTF and Postal Inspectors executed a search warrant at MEDINA's residence. A search of the apartment commenced, and numerous items of evidentiary value were discovered, to include the following:

- a Home Depot bucket containing a vacuum sealed bag that had a green leafy substance, identified as marijuana inside.
- A set of brass knuckles
- A can of OC spray

43.    Additionally, a plastic sandwich bag was found on the kitchen table containing a white piece of paper. Upon removing the piece of paper, Inspectors discovered the piece of paper was a printout of a screen shot of a USPS website that listed the following tracking number: 9505 5104 1577 1140 3971 25. The tracking information listed on the piece of paper indicated the parcel was delivered at the mailbox on May 24, 2021 at 3:04 pm. This tracking number is the same tracking number for the MELROSE AVE PARCEL that the individuals who abducted VICTIM-1 asked him about. Also, there was a handwritten note, in red ink, on the piece of paper that stated the following: "Need full name Physical + vehicle description of carrier(s) on this very date You will be compensated someone will meet you on Friday or Saturday". There were also three $100.00 bills wrapped in with that piece of paper.

44.    A criminal history query was conducted on GARAY and it was discovered that he has a vast criminal history dating back to 2010, to include arrests for felony possession of a firearm, possession of more than an ounce of cocaine, identity fraud,

possession of more than a kilogram of cocaine and various traffic related offenses. Additionally, GARAY is currently on federal supervised release stemming from a guilty plea made on January 23, 2015 for violating Title 21:841(a)(1)&(b)(1)(B) - POSSESSION WITH INTENT TO DISTRIBUTE HEROIN. GARAY was subsequently sentenced to 60 months of incarceration followed by four years of supervised release[5]. GARAY had previously pled guilty in April 2011 to violating Title 21:841(a)(1) and (b)(1)(C) - POSSESSION WITH INTENT TO DISTRIBUTE COCAINE. GARAY was later sentenced to five years of supervised release[6].

45. A criminal history query was conducted on HALL and it was discovered that he too has a vast criminal history dating back to 2000 for arrests in Georgia and Rhode Island for possession of marijuana, possession of cocaine, possession of a firearm without a license, assault, aggravated assault and various traffic violations. Additionally, HALL pled guilty to POSSESSION OF FIVE GRAMS OR MORE OF COCAINE BASE in violation of 21 USC 844 and FELON IN POSSESSION OF A FIREARM in Violation of 18 USC 922(g)(1)[7] on November 7, 2005. In March 2006, HALL was sentenced to 120 months in federal prison followed by three years of supervised release.

46. There is therefore probable cause to believe that from on or about March 15, 2021 to June 8, 2021, in the District of Rhode Island and elsewhere, defendants EDGAR ANTONIO MEDINA, ANDRES GARAY, and RONALD HALL did knowingly conspire to

---

[5] Please refer to CRIMINAL DOCKET FOR CASE #: 1:14-cr-00091-WES-LDA-1
[6] Please refer to CRIMINAL DOCKET FOR CASE #: 1:11-cr-00044-WES-LDA-1
[7] Please refer to CRIMINAL DOCKET FOR CASE #: 1:05-cr-00126-WES-PAS-1

possess with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 21 U.S.C. § 846.

I declare that the foregoing is true and correct.

RICHARD F. ATWOOD
U.S. Postal Inspector

U.S. Postal Inspection Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

June 9, 2021
*Date*

*Judge's signature*

Providence, RI
*City and State*

Patricia A. Sullivan, US Magistrate Judge
*Printed name and title*