IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 21-cr-62 JJM |
| | ) | |
| EDGAR MEDINA, et al. | ) | |

## **GOVERNMENT'S TRIAL MEMORANDUM**

**A.  Factual Summary**

On June 1, 2021, two masked drug dealers kidnapped a U.S. Postal Service (USPS) mailman at gun point. They drove him through a neighborhood of Pawtucket, Rhode Island while grilling him about a package they thought he had delivered to Melrose Avenue in Pawtucket. The package apparently had been delivered without its contents — cocaine — and they thought the mailman was responsible.

The kidnappers, co-conspirators Edgar Medina and Ronald Hall, drove the mailman to his own home, and demanded entry to the house to search for the missing cocaine.[1] They parked their car in the mailman's driveway, continuing their interrogation, while the mailman's unsuspecting neighbors watched. The mailman was unable to let them into his home, having left his keys in his mail truck. At some point, Medina and Hall became satisfied that they had grabbed the wrong man. They drove the mailman back to a location near the original abduction site and released him.

After releasing the mailman, Medina and Hall drove through the neighborhood, linking

---

[1] On December 30, 2025, Defendant Hall pled guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, and kidnapping.

1

up with their co-conspirator later identified as Defendant Alijah Parsons. Parsons had been canvassing the abduction site and route while Medina and Hall had detained and interrogated the mailman. At this point, all three co-conspirators, traveling in two vehicles belonging to Medina, got onto the highway, and headed towards Medina's home located at 262 George Waterman Road in Johnston, RI.

Little did they know that at the time they abducted the mailman, he had been on a Bluetooth call with his pregnant fiancée, and that the call lasted the duration of the abduction. Despite Medina and Hall warning the mailman not to call police and threatening that the mailman would not want his unborn children to grow up to be "bastards," the fiancée dialed 911 to report the abduction to police.

Shortly after Medina and Hall released the mailman, police located him on Division Street. A massive manhunt ensued.

The U.S. Postal Inspection Service ("USPIS"), aided by federal, state, and local law enforcement, began an "all-hands on deck" investigation to identify and arrest the kidnappers. Within one week, Medina and Hall were in custody, along with their co-conspirator, Defendant Andres Garay. The three co-conspirators were arrested on June 8, 2021, after the controlled delivery of two of three cocaine packages, which had been mailed by Parsons several days earlier from Puerto Rico. Prior to their arrest, Medina, Hall, and Garay conducted surveillance of the controlled deliveries. Law enforcement arrested them as Hall retrieved the package mailed to 102 Congress Avenue in Providence. In the following months, Defendant Parsons and another co-conspirator, Irving Medina, were also arrested and charged.[2]

---

[2] Defendant Irving Medina pled guilty to the drug trafficking conspiracy and was sentenced on

The investigation revealed a drug trafficking conspiracy involving at least 8 shipments of cocaine from Puerto Rico to Rhode Island, as well as the attempted movement of money to Puerto Rico. Through the search of USPS databases, including a query of internet protocol ("IP") addresses used by devices tracking packages sent through the mail, investigators identified drug packages sent to different locations later determined to be associated with Medina. Three of these packages, sent by Parsons on June 4, 2021, were seized and used as part of the controlled deliveries that precipitated the June 8, 2021, arrests of Medina, Hall, and Garay.

Video surveillance evidence from cameras along the kidnapping route and a drug delivery point were collected and analyzed leading to the identification of vehicles used by the defendants during the conspiracy. Additionally, investigators collected surveillance footage from post offices in Puerto Rico. These video clips depicted Parsons mailing the three drug packages later seized by law enforcement and used in the controlled deliveries. The surveillance video, in conjunction with other evidence including rental car records, established that she drove with Medina to these post offices to mail the drug packages.

Searches of the defendants' cellphones resulted in the seizure of evidence demonstrating a coordinated and calculated plan by the co-conspirators to identify and abduct the mailman that they suspected of stealing their cocaine. Investigators recovered evidence of surveillance of various mailmen leading up to the abduction from the cellphones of defendants Medina, Garay, and Parsons. Once the defendants ruled out their initial victim as the mailman responsible for the missing cocaine, defendant Garay continued the effort to surveille and identify the next target.

---

June 4, 2024. Upon transfer from the Bureau of Prisons to a halfway house, Irving Medina escaped and was re-arrested by the U.S. Marshal's Service. He remains in federal custody pending a new charge.

These cellphone searches likewise resulted in the seizure of evidence related to the operation of the drug trafficking conspiracy and the shipment and tracking of cocaine packages from Puerto Rico to the local area.

Cell site location information ("CSLI") provided evidence of the defendants' whereabouts at key times during the conspiracy and kidnapping in furtherance thereof, including when drug packages were shipped and delivered, as well as during known incidents of surveillance of mailmen leading up to the kidnapping. Airline records established that between August 2020 and June 2021, Medina, Hall, Garay, and Parsons traveled to Puerto Rico, often traveling together or having overlapping stays with another of the co-conspirators. Call detail records provided additional evidence of the communications and coordination between the defendants, as well as their source of supply in Puerto Rico.

Subsequent searches of vehicles used by the co-conspirators during the kidnapping and while collecting cocaine packages, and searches of Medina's, Parsons', and Irving Medina's respective residences, resulted in the seizure of drugs, drug trafficking paraphernalia, and evidence of the kidnapping. Additionally, fingerprint analysis of physical evidence seized identified Medina's and Parsons' fingerprints on drug packages and Parsons' fingerprints on the license plate of the kidnapping vehicle.

  B.  **Analysis of Applicable Law**

**<u>Count 1: Conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine</u>**

The defendants are charged in Count 1 of the Second Superseding Indictment with, between August 2020 and June 8, 2021, knowingly, intentionally, and willfully combining, conspiring, confederating, and agreeing with each other to possess with intent to distribute 5

kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(ii).

The elements of that offense are:

First, that the conspiracy charged in the Indictment existed between at least two people to distribute and possess with intent to distribute controlled substances; and

Second, that the Defendant willfully joined in that agreement.

If the jury finds that the above elements are met, then they will be asked to determine whether the conspiracy involved 5 kilograms or more of cocaine, and with respect to each defendant, whether 5 kilograms or more of cocaine was reasonably foreseeable to him or her.

Source: Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.371(1), § 4.21.841(a)(1)(A), and Comment 2; *United States v. González-Vélez*, 466 F.3d 27, 36 (1st Cir. 2006); *United States v. Pizarro*, 772 F.3d 284, 292-94 (1st Cir. 2014).

## Count 2: Kidnapping

The defendants are charged in Count 2 of the Second Superseding Indictment with, on or about June 1, 2021, aiding and abetting each other to knowingly and unlawfully seizing, confining, kidnapping, abducting, and carrying away VICTIM 1, a person among those officers and employees described in 18 U.S.C. § 1114, to wit, a letter carrier employed by the USPS, while VICTIM 1 was engaged in the performance of his official duties, in violation of 18 U.S.C. §§ 1201(a)(5) & (2), and *Pinkerton v. United States*, 328 U.S. 640 (1946).

The elements of that offense are:

First, the defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away VICTIM 1;

Second, at the time VICTIM 1 was a letter carrier for the United States Postal Service;

Third, the defendant acted while VICTIM 1 was engaged in, or on account of, the performance of official duties; and

<u>Fourth</u>, the defendant held or detained VICTIM 1 against his will.

<u>Source</u>: Model Criminal Jury Instructions, Ninth Circuit, 17.4 (2024); *United States v. Mathis*, 173 F.3d 857 (6th Cir. 1999) (unpublished).

### **Counts 3 & 4: Possession and attempted possession with the intent to distribute 500 grams or more of cocaine**

The defendants are charged in Counts 3 and 4 of the Second Superseding Indictment with, on or about June 8, 2021, aiding and abetting each other to knowingly and intentionally possess and attempt to possess 500 grams or more of a mixture and substance containing a detectable amount of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), 18 U.S.C. § 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

The elements of this offense are:

(1) that defendant possessed, either actually or constructively, a controlled substance;

(2) with the specific intent to distribute; and

(3) that (s)he did so knowingly and intentionally.

If the jury finds that the above elements are met, then they will be asked to determine whether the offense involved 500 grams or more of cocaine.

<u>Source</u>: Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.21.841(a)(1)(A) and Comment 2; *United States v. Cruz-Rivera*, 14 F.4th 32, 55 (1st Cir. 2021) ("the government [must] prove <u>only</u> that the offense 'involved' a particular type and quantity of [a proscribed] drug, not that the defendant knew that he was distributing that particular drug type and quantity").

C.   **Potential evidentiary issues**

Defense counsel for defendant Garay advised that Garay objects to all government exhibits, and he has not articulated an evidentiary basis for such objections. The remaining

6

defendants have not indicated their position. Nonetheless, many potential evidentiary issues or objections have already been resolved by the Court in prior rulings on the parties' motions *in limine*. *See, e.g.,* ECF 164 (excluding the Hall message as to defendants other than Hall); Text Order dated 10/26/23 granting ECF 206 (admissibility of video surveillance evidence through certifications and Inspection Service witnesses and admissibility of video montages) and ECF 217 (admissibility of DEA Asset Forfeiture Notices); Text Order dated 10/26/23 denying ECF 202 (motion to preclude use of CAST Team Slides) and 218 (motion to preclude use of CAST Team Slides based on color) but ordering all FBI and CAST logos removed from the exhibit; Text Orders dated 10/27/23 granting ECF 169, 200, and 223 (motions to preclude prior bad acts and criminal convictions); Text Order dated 11/3/23 denying ECF 203 (motion to preclude use of term "victim") provided government only uses word "victim" in opening and closing; and Text Orders dated 11/7/23 denying ECF 226 (Parsons' motion to exclude introduction of firearm) and ECF 227 (motion to exclude law enforcement opinion testimony) because firearms are tools of the trade and testimony of experienced law enforcement officials could assist trier of fact as to the practices of drug traffickers using the mails.

To the extent there remain any unresolved potential evidentiary issues, the government provides the following:

1. **911 Call**

The government intends to introduce the 911 call to the Pawtucket Police Department placed by the victim mailman's fiancée during the abduction. This evidence (and its transcript) will be introduced during the fiancée's testimony. It is admissible as an exception to the rule against hearsay as either a present sense impression or an excited utterance. *See* Fed. R. Evid.

803(1) (present sense impression) and (2) (excited utterance). The fiancée was clearly upset and stressed by what she believed to be some sort of aggression against the mailman. She will testify as to the stress that she experienced, and her anxiety can be clearly heard in the call itself. Furthermore, the call was placed while the abduction was occurring and therefore, although contemporaneity is not required under the rule, in this case the call clearly occurred at the same time as the startling event. *United States v. Shoup*, 476 F.3d 38, 42 (1st Cir. 2007) (upholding admission of a 911 call); *see United States v. Estes*, 985 F.3d 99, 104 (1st Cir. 2021) (upholding admission of 911 call although caller did not testify at trial and finding call to be non-testimonial in nature).

### 2. Transcripts

In this case, the government intends to introduce audio-video recordings conducted in English and text messages that occurred in Spanish. Transcripts of the audio recordings have been prepared to aid the jury's consideration of the evidence. Additionally, English translations of the Spanish text messages have also been provided. The Court should allow transcripts of the English audio recordings to go to the jury room. There is no genuine dispute as to their accuracy and the transcripts will aid the jury in its review of evidence. *See generally United States v. Rengifo*, 789 F.2d 975, 980-83 (1st Cir. 1986). With respect to the English translation of Spanish text messages, upon proper authentication as to the accuracy of the translation, the English translations should be admitted into evidence. *See United States v. Morales-Madera*, 352 F.3d 1, 9 (1st Cir. 2003).

### 3. Summary charts and demonstrative exhibits

The government seeks to introduce several summary exhibits to assist in the presentation

of evidence in this case. The evidence in the case consists of several hundred exhibits, including telephone records, airline records, and records of the USPS spanning multiple months and reflecting numerous events relevant to the charged conspiracy. Given the detail and complexity of the evidence, summary exhibits should clarify and simplify the evidence for the jury and allow presentation of evidence that cannot otherwise be conveniently examined in court.

Federal R. Evid. 1006 permits the admission as substantive evidence charts that summarize voluminous evidence. *See United States v. Appolon*, 695 F.3d 44, 61 (1st Cir. 2012); *see also United States v. Milkiewicz*, 470 F.3d 390, 396-97 (1st Cir. 2006) (Rule 1006 summaries may be admitted in addition to, not just in lieu of, admission of underlying bank records). The prerequisites for a Rule 1006 summary chart are that (a) the underlying source materials are admissible; (b) the underlying source materials are what the proponent claims them to be; (c) the summary chart accurately summarizes the source materials; (d) the underlying source materials are made available to the other party; and (e) the underlying source materials are too voluminous to be conveniently examined in court. *See Milkiewicz*, 470 F.3d at 396. As long as these requirements of Rule 1006 are satisfied, a summary chart may be offered into evidence and made available to the jury. *See Appolon*, 695 F.3d at 61; *United States v. McElroy*, 587 F.3d 73, 80 (1st Cir. 2009).

"A trial judge also may allow use of a chart or other summary tool under Fed. R. Evid. 611(a), which gives the trial court 'control over the mode ... [of] presenting evidence.'" *Milkiewicz*, 470 F.3d at 397. Rule 611(a) charts are to 'clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or jury.'" *Id.* Rule 611(a) charts, also known as "pedagogical devices," must be linked to evidence

already admitted, and such charts are not usually admitted into evidence. *Id.* In some cases, however, "'pedagogical devices may be sufficiently accurate and reliable that they, too, are admissible in evidence, even though they do not meet the specific requirements of Rule 1006.'" *McElroy*, 587 F.3d at 82 (quoting *Milkiewicz*, 470 F.3d at 398).

In this case, the government seeks to introduce several exhibits that summarize voluminous information obtained from USPS databases related to eight drug packages shipped via the U.S. mail from Puerto Rico to Rhode Island. *See* Exhibits 16[3], 21, 21A, 21B, 101, and 102. The database information related to package tracking numbers and IP addresses used by devices tracking packages through usps.com were previously provided in discovery to the defendants, as were the package labels and delivery information associated with the packages. In the above referenced exhibits, information related to the exhibits are summarized so that the jury can see the information in an accessible fashion. The charts are authentic, accurate, and based on information otherwise admissible at trial.[4] They also are neutral and devoid of argumentative

---

3 Exhibit 16 references a ninth package that was identified but for which no other shipping information could be located because too much time had elapsed since the package was shipped.

4 *See United States v. Patterson*, 644 F.2d 890, 900-01 (1st Cir. 1981) (affirming district court's decision to allow various United States Postal Service records into evidence pursuant to the business records exception to the hearsay rule); *United States v. Rodriguez-Kelly*, No. 23-0231 (MAJ), 2024 WL 4263027, at *3 (D.P.R. Sept. 23, 2024) (allowing government to admit Puerto Rico Department of Transportation records under Fed. R. Evid. 902(11), 902(13), and 803(6)); *see also United States v. Lundstrum*, 880 F.3d 423, 441-42 (8th Cir. 2018) (affirming the admission of government reports under Fed. R. Evid. 803(6) in criminal cases and providing examples); *United States v. Miah*, 571 F.Supp.3d 465, 470 (W.D. Pa. 2021) (FBI's tracking device data was a business record admissible pursuant to Fed. R. Evid. 803(6)); *United States v. Davis*, No. 3:18-cr-00131-TMB-MMS, 2021 WL 1931871, at *2 (D. Alaska May 13, 2021) (admitting USPS surveillance video as business records pursuant to certificates of authenticity prepared in accordance with Fed. R. Evid. 902(11) and (13)).

phrasing or connections. Upon the government laying the proper foundation, the Court should admit these exhibits pursuant to Fed. R. Evid. 1006. In the alternative, were the Court to conclude that the charts are not admissible under Rule 1006, the Court should admit the charts under Fed. R. Evid. 611(a) or otherwise allow the government to use them during the presentation of testimony because the charts will assist the jury in understanding the evidence.

Similarly, the government has prepared another chart, Exhibit 99 (Air Travel Graphic), for the presentation of travel information to the jury based upon airline records.[5] This chart in one page accurately summarizes over 50 pages of certified business records obtained from Jet Blue and Spirit Airlines, *see* Exhibits 73 – 73C and 74 – 74F, that were previously provided to defendants. The chart is neutral in its summary of the air travel in the case. Upon the government laying the proper foundation, this record should also be admitted under Rule 1006, or, in the alternative, Rule 611(a).

D.   **Estimated length of trial, witness list, and order of proof**[6]

The government expects trial to last between 2 and 3 weeks. Below is an order of proof that identifies the government's witnesses, their expected testimony, an estimate of examination times, and known conflicts related to each witness:

---

[5] As previously noted, the Court already ruled Exhibit 72, the CAST slides, admissible. *See* Text Order dated 10/26/23 denying ECF 202 (motion to preclude use of CAST Team Slides) and 218 (motion to preclude use of CAST Team Slides based on color) but ordering all FBI and CAST logos removed from the exhibit. This exhibit was prepared based upon voluminous telephone records obtained during the investigation and provided to the defendants in discovery with certifications of authenticity.

[6] The government in good faith has set forth its order of proof which is predicated upon full days of trial; however, events at trial, the length of cross-examination, travel plans, and witnesses' schedules may impact the government's ability to adhere to its plan. In the event of changes, the government will notify the Court and counsel as soon as practicable.

| | **Witness** | **Description of Expected Testimony** | **Direct** **(Est.)** | **Cross** **(Est.)** |
|---|---|---|---|---|
| 1. | Dennis Keeler (MA State Police) | Testimony: Seizure of $42,000 from co-conspirator traveling to PR in Aug. 2020 | 40 min | 30 min |
| 2. | Clint Darocha (Victim mailman) | Testimony: Abduction that occurred on June 1, 2021 & events leading up to the abduction | 2 hr | 1 hr |
| 3. | Lauren Hall (Victim's wife) | Testimony: Abduction that occurred on June 1, 2021 & events leading up to the abduction | 1 hr | 30 min |
| 4. | Diana Giraldo (Victim's neighbor on June 1, 2021) | Testimony: Video camera footage provided from June 1, 2021<br>*School teacher | 15 min | 15 min |
| 5. | Brian Piwonski (Victim's neighbor on June 1, 2021) | Testimony: Eyewitness observations of kidnapping vehicle on June 1, 2021 | 15 min | 15 min |
| 6. | Margaret Piwonski (Victim's neighbor on June 1, 2021) | Testimony: Eyewitness observations of kidnapping vehicle on June 1, 2021 | 15 min | 15 min |
| 7. | Elba Londono (USPS employee) | Testimony: USPS PASS system photograph of 34 Melrose Ave package provided to Inspectors | 15 min | 15 min |
| 8. | Jim Foley (USPIS Inspector) | Testimony: Introduce USPS records; collection of surveillance videos; participant in execution of search warrants; lay opinion testimony related to the patterns and practices of drug traffickers, in particular as it relates to the use of the mails | 4 hr | 3 hr |
| 9. | Juan Coronado (RI State Police; DEA TFO) | Testimony: Lay opinion testimony related to the patterns and practices of drug traffickers; surveillance testimony; arrests of HALL, MEDINA, and GARAY; processing of evidence | 1 hr | 1 hr |
| 10. | Michael Maccarone (USPIS Inspector) | Testimony: Participant in execution of search warrants; undercover in controlled deliveries; processing of evidence<br>*Surgery on February 2, 2026, and multiple week recovery | 2 hr | 1 hr |

12

| 11. | Andrew Bowen (USPIS Senior Forensic Chemist) | <u>Testimony</u>: Forensic analysis of cocaine<br>*Trial in E.D. Cal. on February 3, 2026 | 1 hr | 1 hr |
|---|---|---|---|---|
| 12. | Ramfis Fuentes (USPIS contractor) | <u>Testimony</u>: Collection of surveillance videos from Puerto Rico Post Offices related to drug packages<br>*Traveling from Puerto Rico | 2 hr | 1 hr |
| 13. | Herminio Casanova (USPIS contractor) | <u>Testimony</u>: Collection of surveillance videos from Puerto Rico Post Offices related to drug packages<br>*Traveling from Puerto Rico | 2 hr | 1 hr |
| 14. | Ron Schlesinger (USPIS) | <u>Testimony</u>: Collection of videos from various business locations along abduction route | 30 min | 15 min |
| 15. | Scott Sullivan (Pawtucket PD) | <u>Testimony</u>: Collection of video from Pawtucket PD traffic cameras | 2 hr | 30 min |
| 16. | Courtney Littlejohn (USPIS Inspector) | <u>Testimony</u>: Conducted surveillance and participated in execution of search warrants<br>*Traveling from DC | 30 min | 30 min |
| 17. | Kyle LoPriore (Groton CT PD) | <u>Testimony</u>: Conducted surveillance and processed evidence | 30 min | 30 min |
| 18. | Michael Bucca (MA State Police) | <u>Testimony</u>: Conducted surveillance and processed evidence | 30 min | 30 min |
| 19. | Brian Bukuras (USPIS Inspector) | <u>Testimony</u>: Search of vehicles<br>*Trial in the D.N.H. the week of February 2, 2026 | 1.5 hr | 1 hr |
| 20. | Kelly McKiernan (USPIS Inspector) | <u>Testimony</u>: Conducted surveillance and participated in execution of search warrant | 1 hr | 30 min |
| 21. | Joe Sciscio (USPIS Analyst) | <u>Testimony</u>: Forensic analysis of cellphones<br>*Traveling from DC | 6 hr | 2 hr |
| 22. | John Cinquegrana (USMS, Ret. Deputy) | <u>Testimony</u>: Known fingerprint cards from MEDINA and PARSONS | 20 min | 20 min |

13

| 23. | Patricia Cornell (USPIS Forensic Analyst) | Testimony: Search of Chrysler; Latent print analysis of items in Chrysler, 3 drug parcels, and fingerprint cards<br><br>*Traveling from DC | 2 hr | 1 hr |
|---|---|---|---|---|
| 24. | Magdalena Borzymowski (USPIS Analyst) | Testimony: Forensic analysis of cellphones | 6 hr | 2 hr |
| 25. | SA Kevin Hoyland (FBI CAST) | Testimony: Analysis of historical cell site location data of co-conspirators' cellphones | 3 hr | 2 hr |
| 26. | Cory Mcmanus (USPIS Inspector) | Testimony: Collection of video; conducted surveillance; participated in execution of warrants<br><br>*Out-of-state the week of January 26, 2026 | 2 hr | 1 hr |

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

CHARLES C. CALENDA
UNITED STATES ATTORNEY

/s/ Christine Lowell
CHRISTINE LOWELL
SANDRA R. HEBERT
Assistant U. S. Attorneys
U.S. Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
christine.lowell@usdoj.gov
sandra.hebert@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on January 19, 2026, I caused a copy of the within "Government's Trial Memorandum" to be filed electronically such that it is available for viewing and downloading from the ECF system.

/s/ Sandra R. Hebert
SANDRA R. HEBERT
Assistant U. S. Attorney
U.S. Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.hebert@usdoj.gov